IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SAMSUNG ELECTRONICS CO., LTD. &          )
SAMSUNG ELECTRONICS AMERICA, INC.,       )
                                         )
                Plaintiffs,              )
                                         )       C.A. No. ___25-cv-00001-___ CFC
        v.                               )
                                         )       **DEMAND FOR JURY TRIAL**
KONINKLIJKE KPN N.V. & NEDERLANDSE        )
ORGANISATIE VOOR TOEGEPAST               )       ███████████████████
NATUURWETENSCHAPPELIJK                   )
ONDERZOEK TNO,                           )
                                         )       REDACTED - PUBLIC VERSION
                Defendants.              )

## COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT

### INTRODUCTION

Plaintiffs Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively "Samsung") file this Complaint against Defendants Koninklijke KPN N.V. ("KPN") and Nederlandse Organisatie voor Toegepast Natuurwetenschappelijk Onderzoek TNO ("TNO") seeking declaratory judgment of non-infringement as to U.S. Patent Nos. 8,601,141 (the "'141 Patent"), 10,419,910 (the "'910 Patent"), 9,820,134 (the "'134 Patent"), 10,103,887 (the "'887 Patent"), 9,699,820 (the "'820 Patent"), 9,438,572 (the "'572 Patent"), 9,913,072 (the "'072 Patent"), and 9,372,098 (the "'098 Patent") (collectively, the "Patents-in-Suit"). Samsung alleges as follows:

### THE PARTIES

1.      Plaintiff Samsung Electronics Co., Ltd. ("SEC") is a corporation organized and existing under the laws of the Republic of Korea, with its principal place of business at 129 Samsung-ro, Maetan-3dong, Yeongtong-gu Suwon-si, Gyeonggi-do 16677. Established as a small business in Taegu, South Korea, in 1969, SEC, along with its subsidiaries, has grown to become a

global leader in various technology areas, widely ranging from computers and mobile phones to semiconductors, home appliances and digital imaging. Samsung is one of the most successful manufacturers of wireless communication devices in the world and has long focused on the United States as a critical market for its products.

2.      Plaintiff Samsung Electronics America, Inc. ("SEA") is a New York corporation having its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660.    SEA is involved in numerous U.S.-based activities relating to the commercialization, engineering, research and development, testing, customer service, importation, sales, marketing, and distribution of wireless communication devices, including network and mobile devices (including smartphones, tablets, smartwatches, and mobile accessories) that communicate using cellular standards, including 3G, 4G, and 5G.    SEA has provided cellular network equipment and services to U.S. carriers such as Verizon, AT&T, and DISH, including, for example, the Samsung SVR20A, and has supplied tens of millions of mobile devices, including, for example, the Samsung Galaxy S23, Samsung Galaxy A32 5G, and Samsung Galaxy A54 5G, in the United States, including in the State of Delaware.

3.      On information and belief, Defendant KPN is a foreign corporation with its principal place of business at Maanplein 55, NL-2516 CK, The Hague, The Netherlands.

4.      On information and belief, Defendant TNO is a foreign organization with its principal place of business at Anna van Buerenplein 1, 2595 DA, The Hague, The Netherlands.

5.      On information and belief, TNO is an alter ego and/or agent of KPN. Upon information and belief, on January 1, 2003, KPN transferred its R&D division to TNO pursuant to a partnership of "an indefinite term" for the sole purpose of assisting and/or supporting KPN to,

for example, monetize, license, and enforce KPN's patent portfolio.[1] On information and belief, within the terms of the partnership, KPN has "an active say in the development of [the] knowledge portfolio" and "owns the intellectual property rights attaching to the results of projects it commissions," "royalty agreements must be made with KPN," and "TNO'[s] staff can move to KPN and vice versa."[2] On information and belief, KPN is responsible for developing and executing the licensing and enforcement strategies of the patents jointly owned by KPN and TNO, and KPN has the right to license the Patents-in-Suit, declare them as essential, and/or contribute them to patent pools without TNO's authorization or involvement.

6.    On information and belief, along with KPN, TNO was once the co-assignee of the '910, '134, '887, '820, '572, '072, and '098 Patents, and is currently the co-owner of the '134, '887, '820, '572, and '072 Patents. Nonetheless, on information and belief, KPN has previously represented itself as the sole owner of all Patents-in-Suit, including in correspondence to Samsung.[3] On information and belief, TNO has assigned any rights it has or had to license the Patents-in-Suit to KPN.[4] For example, KPN has previously granted Samsung a covenant-not-to-sue based on the Patents-in-Suit without TNO's involvement, representing that "KPN and its Affiliated Companies are ***not*** under any obligation to any other person, organization or company which in any way prevents or restricts KPN from entering into this Agreement, from agreeing to

---

[1]    Available at https://publications.tno.nl/publication/34622272/taXOEr/2003138-EN-011203.pdf.

[2]    *Id.*

[3]    *See* Exs. 6-7. In addition, the brochure for Sisvel's Mobile Communications Program (MCP) identifies KPN as the sole owner of the Patents-in-Suit. *See* https://www.sisvel.com/xlin7ipl485u/75U07rDiWucFVfdFZUQOdr/33e6151893eaf7fd13e5dd517adb8cdc/LTE_Brochure.pdf.

[4]    To the extent TNO has assigned or transferred to KPN any rights it had or has in the Patents-in-Suit, such that KPN owns all substantial rights in the Patents-in-Suit, Samsung will voluntarily dismiss TNO as a Defendant in this action.

the terms hereof and from giving the promises and undertakings contained herein." Ex. 1 art. 6.1 (emphasis added).

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the federal claims alleged herein under 28 U.S.C. §§ 1331 and 1338(a).  This Court may grant declaratory relief in this action pursuant to at least 28 U.S.C. § 2201 *et seq.*  An actual controversy exists under the Declaratory Judgment Act regarding whether Samsung's products infringe the Patents-in-Suit as set forth herein.

8.      This Court has personal jurisdiction over KPN because KPN has purposely availed itself of this Court's jurisdiction by directing its patent enforcement efforts in this District as set forth herein.  Alternatively, personal jurisdiction is proper under Rule 4(k)(2) of the Federal Rules of Civil Procedure because: (1) this case relates to KPN's assertions of patent infringement and therefore arises under federal law; (2) KPN is a foreign corporation and lacks sufficient contacts with any state; and (3) KPN has sufficient contacts with the United States as a whole, directing its patent enforcement efforts toward numerous U.S. entities as set forth herein.

9.      This Court has personal jurisdiction over TNO in this action. Upon information and belief, personal jurisdiction is proper under Rule 4(k)(2) of Federal Rules of Civil Procedure because: (1) this case relates to assertions of patent infringement and therefore arises under federal law; (2) TNO is a foreign organization and lacks sufficient contacts with any state; and (3) TNO has sufficient contacts with the United States as a whole, directing its patent enforcement efforts toward various U.S. entities. Upon information and belief, personal jurisdiction is also proper within this District because TNO has purposefully availed itself of the privilege of doing business in Delaware directly or indirectly through KPN; maintains pervasive, continuous, and systematic contacts with the State of Delaware through KPN; and conducts

business in this District, including but limited to efforts to enforce the Patents-in-Suit through KPN.

10. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400, including because KPN is a foreign corporation that may be sued in any judicial district under 28 U.S.C. § 1391(c); KPN has conducted business in this District; or a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

11. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400, including because TNO is a foreign corporation that may be sued in any judicial district under 28 U.S.C. § 1391(c); TNO has conducted business in this District; or a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## FACTUAL BACKGROUND

**A.    The 2016 KPN/Samsung License Agreement**

12. Between 2014 and 2016, KPN filed lawsuits against Samsung in the United States, Germany, and China alleging infringement of certain KPN patents directed to wireless telecommunications technology (the "Prior Lawsuits"). To settle the Prior Lawsuits, KPN and SEC executed a Settlement, License, and Non-Assertion Agreement (the "2016 License"), attached as Exhibit 1.

13. Pursuant to the 2016 License, in exchange for a payment of ████████ USD, KPN granted Samsung (a) a license to certain patents at issue in the Prior Lawsuits, defined as "KPN Licensed Patents," (b) a covenant-not-to-sue Samsung, until December 31, 2024, for infringement of certain other patents in KPN's patent portfolio, defined as the "KPN Non-Asserted Patents," and (c) a waiver of damages that would have otherwise accrued during the term of the 2016 License. Ex. 1 arts 2.1, 2.3, 2.3.1.

14. Pursuant to the 2016 License, the phrase "KPN Non-Asserted Patents" means "all patents, patent applications, anywhere in the world (including but not limited to, divisionals, continuations, continuations in part, reissues, renewals, reexaminations or extensions of any kind and any counterparts claiming priority therefrom), and including utility models, owned, licensable or otherwise controlled by KPN or its Affiliated Companies during the period from the Effective date until December 31, 2024, with the exception of (i) the KPN Licensed Patents, and (ii) the patents, patent applications, utitlity [sic] models and divisional applications listed in Annex 2." Ex. 1 p. 5. Under this definition, all Patents-in-Suit are KPN Non-Asserted Patents.

15. The 2016 License has not been extended or renewed. Accordingly, KPN's covenant-not-to-sue Samsung based on the KPN Non-Asserted Patents, including the Patents-in-Suit, expired on December 31, 2024.

**B.    KPN's Repeated Allegations that Samsung's Standard-Compliant Products Infringe KPN's Allegedly Essential Patents, Including KPN Patents in the MCP Pool**

16. Today, wireless mobile telecommunications standards are developed largely through the Third Generation Platform Partnership ("3GPP"), which unites seven standard setting organizations from different areas around the world. Market participants working within 3GPP developed the Universal Mobile Telecommunications Standard ("UMTS," also known as wideband CDMA ("W-CDMA")) and Long Term Evolution ("LTE") standards, commonly known as 3G and 4G, respectively, as well as the current 5G New Radio ("5G" or "5G/NR") standards. Many companies, including Samsung and KPN, participate in 3GPP through the European Telecommunications Standards Institute ("ETSI").

17. ETSI has adopted an Intellectual Property Rights ("IPR") Policy that governs the use and incorporation of patented technology into standards. The ETSI IPR Policy

requires, among other things, parties participating in the work of 3GPP to identify potentially essential patents and state whether they will agree to license them on fair, reasonable and non-discriminatory terms and conditions. After a patent owner declares its patents as potentially essential to a standard, ETSI does not perform any evaluation as to whether the patent is actually essential to practice the standard. Nor does ETSI require an independent third party to perform such an evaluation.

18.    Some patent owners contribute their potentially essential patents to patent pools, and grant the managers or administrators of those patent pools with the right to sublicense those patents as part of a patent pool. Upon information and belief, KPN has contributed a number of patents that are allegedly essential to 3G, 4G, and/or 5G patents to patent pools managed by a number of entities related to Sisvel International S.A. (collectively, "Sisvel"). Upon information and belief, prior to December 2022, Sisvel managed a Mobile Communication Program ("MCP") which included patents potentially essential to 3G and 4G standards belonging to 10 patent owners, including KPN. All Patents-in-Suit were in Sisvel's MCP pool. Upon information and belief, in or around December 2022, Sisvel rolled the MCP pool into a new program known as the 5G Multimode (5G MM) Licensing Program, which includes patents potentially essential to 3G, 4G, and 5G standards belonging to 14 patent owners, including KPN. Upon information and believe, the 5G MM pool includes substantially all patents in the MCP pool.

19.    A product that complies with a wireless telecommunications standard does not necessarily implement every section of that standard. This is because although some sections are mandatory, other sections are optional. Likewise, the declaration by a patent owner that a patent is potentially essential to a standard does not necessarily mean that all standard-compliant products practice that patent.

7

20.     For example, as shown in the testing documents for the Galaxy S23 product, the Galaxy A32 5G product, and the Galaxy A54 5G product (attached as Exhibits 2, 3, 4, respectively), Samsung's smartphone and network products, although standard-compliant, do not support certain features of the wireless telecommunications standards, including Machine-Type Communications (also known as Machine-to-Machine (M2M) or Device-to-Device (D2D) communications) or Proximity Services (ProSe).

21.     Nonetheless, KPN has on numerous occasions incorrectly alleged that all Samsung products that are compliant with one or more wireless telecommunications standards necessarily practice all KPN patents that have been declared as potentially essential to those standards.

22.     Since around 2019, KPN has periodically sent Samsung, by email, lists of KPN's patents that are purportedly "relevant for [Samsung's] business." The KPN patent lists that KPN sent Samsung in 2021 and 2022 are attached respectively as Exhibits 5 and 6. The patent lists identify every Patent-in-Suit. Despite the covenant-not-to-sue that was in place at the time, KPN represented that its "patent positions" with respect to the identified patents, including the Patents-in-Suit, are "of relevance to the sales by SAMSUNG of smartphones, phones, tablets, smartwatches, smarthome, TV and other terminals, and mobile network infrastructure technology and TV platforms and the like, that are compliant with 5G, LTE , WiFi, VVC and the other technologies referenced in" in the patent lists. Ex. 5. According to KPN's correspondence, the '141, '910, '134, '887, and '098 Patents are essential to the 5G standard and practiced by Samsung's 5G-compliant products; all Patents-in-Suit are essential to the 4G (LTE) standard and practiced by Samsung's 4G-compliant products; and the '141 Patent is essential to the 3G (W-CDMA) standard and practiced by Samsung's 3G-compliant products. Exs. 5, 6. Accordingly,

KPN has taken the position that the Patents-in-Suit are actually essential to practicing the standard(s) to which they are declared and that Samsung infringes those Patents.

23.     In 2022, KPN filed a petition against SEC with the District Court of Harrison County, Texas, 71st Judicial District, alleging breach of the 2016 License and unjust enrichment, based on a July 1, 2021 Settlement and License Agreement between SEC and Sisvel International S.A. *Koninklijke KPN N.V. v. Samsung Elecs. Co., Ltd.*, Cause No. 23-0762 (the "Texas State Court Action").

24.     Although KPN did not plead patent infringement as a cause of action in the Texas State Court Action, at trial, KPN repeatedly argued to the jury that Samsung's 3G-, 4G-, and 5G-compliant smartphones practice the KPN patents that KPN contends are essential to the 3G and 4G standards, including the Patents-in-Suit. In addition, KPN argued to the jury that Samsung must pay for a license to KPN's allegedly essential patents despite KPN's waiver of damages pursuant to the 2016 License. Specifically, as damages for its breach of contract claim, KPN sough the amount of license fees Samsung would have allegedly owed KPN had Samsung taken a license to Sisvel's MCP Pool. As damages for its unjust enrichment claim, KPN sought the amount of benefits Samsung allegedly gained by using KPN's allegedly essential patents in the MCP Pool, including the Patents-in-Suit. Trial transcripts from the Texas State Court Action are attached as Exhibits 7, 8, 9, and 10.

25.     For example, during opening statements and closing arguments, KPN's counsel made the following arguments to the jury:

- "When a technology covered by a patent is required to be used by a standard, it's what we call an essential patent. . . . You'll hear that term repeatedly in this trial. And when you hear the words 'essential patent' or 'standard essential patent,' that means a cell phone that is able to log onto the cellular network and is able to connect to the internet is using the technology in the patent. The patent is required to be used by the standard itself. It's part of the common language." Ex. 7 at 129:7-17.

- "And why did [Samsung] agree to it? They agreed to it because everyone understood these patents are identical. They're all essential. So when Samsung goes to that Sisvel pool and says, I need a license for 3G and 4G cellular essential patents, they were agreeing to also pay us for our identical property that is in that pool that they are also using." *Id.* at 139:6-12.

- "Samsung wanted KPN to give up the right to enforce its property rights in court. They want[ed] KPN to let Samsung continue to squat on their property, and they wanted KPN to give up all the rights to get them off." Ex. 10 at 39:10-14.

- "You heard [KPN] had to sue Samsung [twice] to get their attention . . . . And both of those lawsuits were trying to get Samsung to pay for cellular essential patents, the kinds of cellular essential patents that … without even reading them because they know they're using them. Everybody's using them; they are essential." *Id.* at 39:19-40:1.

- "KPN upheld its end of this bargain, not one patent infringement suit while Samsung was squatting on its property for the last eight years." *Id.* at 54:13-15.

- "We're told [this damages request is] a Powerball because Samsung has sold ▓▓▓▓ ▓▓▓▓ worth of those phones that use the cellular standards that KPN helped to invent. There isn't a lottery in the world that gives those kinds of numbers. But we're the ones that should be ashamed for asking them to pay for the property that helped them make those sales in the first place." *Id.* at 56:4-10.

26.     Likewise, KPN's corporate representative testified to the jury that Samsung must be using KPN's allegedly standard-essential patents in order to comply with the wireless telecommunications standards:

Q:    You said that if it's an essential patent, you can't use the standard without using the patent. Is that right?
A:    That's right.
Q:    Does Samsung make products that use 3G and 4G?
A:    Yes, they do.
Q:    We heard from [Samsung's lawyer] . . . in opening Samsung has lots of patents. Samsung doesn't need anyone else's patents. Samsung doesn't need KPN's patents. Do you remember when he said that?
A:    Yes.
Q:    Do you agree with that, Ms. Gerritse?
A:    No, I do not agree.
Q:    Well why not?

A:    Well, we have some patents definitely.  We have patents, but we have [more] patents on our technologies that Samsung has.  So if Samsung was to comply with the 4G standard, they would have to use our patents.

Ex. 7 at 181:11-19.

27.    KPN's damages expert also testified at length that Samsung's standard-compliant products must be using KPN's allegedly essential patents.  In presenting his damages models for KPN's breach and unjust enrichment claims, KPN's expert applied per-unit royalties—using rates taken from KPN's agreements with Sisvel pursuant to the MCP program—on every 3G-, 4G-, and 5G-compliant smartphone that Samsung had sold and was expected to sell worldwide during the term of the covenant-not-to-sue under the 2016 License.  In addition, according to him, 35 U.S.C. § 287 permitted KPN to collect royalties going back even further, to 2010, six years before the 2016 License was executed:

A:    As I understand it . . . if you have to make a product that is part of the standard essential process, then that means effectively you are using technology that is required to utilize the – the patented components that cover that essential technology."  Ex. 8 at 128:10-14.

A:    [KPN's patents] are standard and essential.  They're operating 3G and 4G.  Samsung is making 3G and 4G phones.  They have to be using those patents.  *Id.* at 129:15-18.

A:    [T]here was another component in the complaint that is unjust enrichment.  And unjust enrichment is really looking at the value received by, in this case, Samsung for essentially not paying KPN for the use of their patents or their patent technology over that period of time from 2010 through now, really.  *Id.* at 160:17-23.

Q:    And . . . does this [damages figure] sort of roughly capture what you think Samsung benefitted from for its use of the patents?

A:    Yes.  This is the value that they received by not having to pay for the use of these patents over that 14-year period of time.  *Id.* at 165:20-24.

Q:    You just told this jury not that long ago that . . . Samsung had utilized or was utilizing all of these patents, these 4G and 3G patents that KPN had, right?

A:    Yes, sir.  *Id.* at 216:17-21.

Q:     The premise of your unjust enrichment claim, the one that gets up to over $600 million, is that Samsung was using KPN's technology, right?

A:     It's that Samsung – yes, they had the use of the technology from 2010 forward, that's correct.

Q:     So what you're telling this jury is that Samsung should have to pay, because they've been using KPN's technology from 2010 forward, right?

A:     I'm saying if the jury feels like that's appropriate, that's the – that's the value that Samsung's received over that 14-year period of time from having the ability to use that technology.  *Id.* at 218:11-22.

Q:     True or not, your assessment of the benefit received by Samsung assumes that the Court would find Samsung benefitted for at least 13 years from the utilization of technology covered by numerous KPN patents, right?

A:     Yes, sir.  *Id.* at 220:11-16.

Q:     You've certainly not undertaken any analysis, have you, that would allow you to tell this jury that Samsung is using KPN's patents? . . . You've not done a technical analysis?

A:     Samsung is using 4G and 3G technologies that are standard and essential, so the definition of that would indicate they're using it.  *Id.* at 221:15-22.

Q:     What you're using is a statute from a patent infringement damages analysis that takes you back – allows you to go back six years.  True?

A:     Yes, that's true.  *Id.* at 230:24-231:2.

Q.·    And since it's 2024, why are you looking all the way back to 2010 in your analysis?

A.·    … One of the -- one of the allowances in patent law, I know we're not in a patent case, but we're talking about patents, is you can actually go back six years to look for past damages.·  So whatever date that you say I believe this organization's infringing my patent, I can go back six years and collect damages, royalties for all of that period of time.  *Id.* at 149:19-11.

28.     The jury returned a verdict in KPN's favor, finding Samsung liable for breach of contract and awarding $287 million in damages, which equaled the amount of license fees Samsung allegedly owed KPN for its allegedly essential patents in the MCP Pool, including the Patents-in-Suit.

**C.    KPN's History of Enforcing its Declared Essential Patents in the District of Delaware**

29.    KPN has filed at least 18 lawsuits in the District of Delaware against over 20 telecommunications companies, alleging infringement of KPN patents that have been declared essential to one or more wireless telecommunications standards.

30.    These lawsuits include at least the following: (1) *Koninklijke KPN N.V. v. NEC Corporation et al.*, C.A. No. 17-88-LPS (D. Del.); (2) *Koninklijke KPN N.V. v. Oppo Electronics Corp.*, C.A. No. 17-89-LPS (D. Del.); (3) *Koninklijke KPN N.V. v. Telit Wireless Solutions, Inc.*, C.A No. 17-92-LPS (D. Del.); (4) *3G Licensing, S.A. v. HTC Corporation*, C.A No. 17-83-GBW (D. Del.); (5) *3G Licensing, S.A. v. LG Electronics Inc.*, C.A. No. 17-85-LPS (D. Del.); (6) *Koninklijke KPN N.V. v. Kyocera Corporation*, C.A. No. 17-87-LPS (D. Del.); (7) *3G Licensing, S.A. v. Lenovo Holding Co., Inc.*, C.A. No. 17-84-LPS (D. Del.); (8) *3G Licensing, S.A. v. Blackberry Limited*, C.A. No. 17-82-LPS (D. Del.); (9) *Koninklijke KPN N.V. v. Gemalto M2M*, C.A. No. 17-86-LPS (D. Del.); (10) *Koninklijke KPN N.V. v. Sierra Wireless, Inc.*, C.A. No. 17-90-LPS (D. Del.); (11) *Koninklijke KPN N.V. v. TCL Corporation*, C.A. No. 17-91-LPS (D. Del.); (12) *Koninklijke KPN N.V. v. TCL Corporation*, C.A. No. 18-928-LPS-CJB (D. Del.)[5]; (13) *Koninklijke KPN N.V. v Bullitt Group Ltd*, C.A. No. 21-44-LPS-CJB (D. Del.); (14) *Koninklijke KPN N.V. v. Acer Inc.*, C.A. No. 21-45-LPS (D. Del.); (15) *Koninklijke KPN N.V. v. BLU Products, Inc.*, C.A. No. 21-42-LPS (D. Del.); (16) *Koninklijke KPN N.V. v. Coolpad Technologies Inc.*, C.A. No. 21-43-GBW-CJB (D. Del.); (17) *Koninklijke KPN N.V. v. Xiaomi Corporation*, C.A. No. 21-41-GBW-CJB (D. Del.); and (18) *Koninklijke KPN N.V. v. u-blox AG*, C.A. No. 21-46-LPS (D. Del.).

---

[5]    In that case, KPN asserted the '669 Patent.

31.     Upon information and belief, in each of these lawsuits, KPN alleged that the defendants' standard-compliant products infringed one or more KPN's patents that had been declared as potentially essential to the 3G, 4G, or 5G standards.

32.     When it comes to enforcing its patent portfolio, KPN has availed itself of this Court's jurisdiction far more often than other district courts.  Upon information and belief, KPN has only initiated four patent infringement actions in all other U.S. district courts combined. These actions include a lawsuit against Samsung, which was one of the Prior Lawsuits that led up to the 2016 License.  *Koninklijke KPN N.V. v. Samsung Electronics America, Inc. et al.*, No. 2:14-cv-01165-JRG (E.D. Tex.).  The other 3 actions are: (1) *Koninklijke KPN N.V. v. BLU Products, Inc.*, No. 1:21-cv-20593-BB (S.D. Fla.); (2) *Koninklijke KPN N.V. v. Telefonaktiebolaget LM Ericsson*, No. 2:21-cv-00113-JRG (E.D. Tex.); and (3) *Koninklijke KPN N.V. v. Telefonaktiebolaget LM Ericsson*, No. 2:22-cv-00282-JRG (E.D. Tex.).[6]  Upon information and belief, in each of these lawsuits, KPN alleged that the defendants' standard-compliant products infringed one or more KPN's patents that had been declared essential to the 3G, 4G, or 5G standards.

**D.      The KPN Patents-in-Suit**

33.     KPN purports to be the owner of U.S. Patent No. 8,601,141 (the "'141 Patent").  On December 3, 2013, the '141 Patent, entitled "Providing enterprise services in a service provisioning network," issued to Pieter Koert Veenstra, Pieter Anne Span, and Leendert Huibert Brouwer.  Upon information and belief, KPN is the current assignee of the '141 Patent. A copy of the '141 Patent is attached as Exhibit 11.

---

[6]     In that case, KPN asserted the '098 Patent.

34.    KPN has declared the claimed subject matter of the '141 Patent to ETSI to be essential to the 3G, 4G, and 5G standards.[7]

35.    KPN purports to be the owner of U.S. Patent No. 10,419,910 (the "'910 Patent"). On September 17, 2019, the '910 Patent, entitled "Telecommunications network and method of transferring user data in signalling messages from a communication unit to a data processing centre," issued to Bryan Jerrel Busropan and Johannes Maria Van Loon. Upon information and belief, KPN is the current assignee of the '910 Patent. A copy of the '910 Patent is attached as Exhibit 12.

36.    KPN has declared the claimed subject matter of the '910 Patent to ETSI to be essential to the 3G, 4G, and 5G standards.[8]

37.    KPN and TNO purport to be the owners of U.S. Patent No. 9,820,134 (the "'134 Patent"). On November 14, 2017, the '134 Patent, entitled "Proximity discovery, authentication and link establishment between mobile devices in 3GPP LTE," issued to Frank Fransen, Peter Veugen, Sander De Kievit, and Maarten Everts. Upon information and belief, KPN and TNO are the current assignees of the '134 Patent. A copy of the '134 Patent is attached as Exhibit 13.

38.    KPN has declared the claimed subject matter of the '134 Patent to ETSI to be essential to the 3G, 4G, and 5G standards.[9]

---

[7]    ISLD-201302-007; ISLD-201302-008; ISLD-201304-014; ISLD-202004-003, available at https://ipr.etsi.org/DynamicReporting.aspx.

[8]    ISLD-201605-009;    ISLD-202110-026,    available    at https://ipr.etsi.org/DynamicReporting.aspx.

[9]    ISLD-201708-015;    ISLD-201809-330;    ISLD-202302-001,    available    at https://ipr.etsi.org/DynamicReporting.aspx.

39.     KPN and TNO purport to be the owners of U.S. Patent No. 10,103,887 (the "'887 Patent").   On October 16, 2018, the '887 Patent, entitled "Operator-assisted key establishment," issued to Frank Fransen.  Upon information and belief, KPN and TNO are the current assignees of the '887 Patent.  A copy of the '887 Patent is attached as Exhibit 14.

40.     KPN has declared the claimed subject matter of the '887 Patent to ETSI to be essential to the 3G, 4G, and 5G standards.[10]

41.     KPN and TNO purport to be the owners of U.S. Patent No. 9,699,820 (the "'820 Patent").   On July 4, 2017, the '820 Patent, entitled "Establishing a device-to-device communication session," issued to Antonius Norp, Frank Fransen, and Sander De Kievit.  Upon information and belief, KPN and TNO are the current assignees of the '820 Patent.  A copy of the '820 Patent is attached as Exhibit 15.

42.     KPN has declared the claimed subject matter of the '820 Patent to ETSI to be essential to the 3G and 4G standards.[11]

43.     KPN and TNO purport to be the owners of U.S. Patent No. 9,438,572 (the "'572 Patent").  On September 6, 2016, the '572 Patent, entitled "Establishing a device-to-device communication session," issued to Antonius Norp, Frank Fransen, and Sander De Kievit.  Upon information and belief, KPN and TNO are the current assignees of the '572 Patent.  A copy of the '572 Patent is attached as Exhibit 16.

44.     KPN has declared the claimed subject matter of the '572 Patent to ETSI to be essential to the 3G and 4G standards.[12]

---

[10]     ISLD-201903-013;            ISLD-202207-047,            available            at https://ipr.etsi.org/DynamicReporting.aspx.
[11]     ISLD-201605-011, available at https://ipr.etsi.org/DynamicReporting.aspx.
[12]     ISLD-201605-011, available at https://ipr.etsi.org/DynamicReporting.aspx.

45.     KPN and TNO purport to be the owners of U.S. Patent No. 9,913,072 (the "'072 Patent").  On March 6, 2018, the '072 Patent, entitled "Method and telecommunications network for controlling activation of at least one terminal in a machine-type communication application," issued to Bryan Jerrel Busropan and Johannes Maria Van Loon.  Upon information and belief, KPN and TNO are the current assignees of the '072 Patent.  A copy of the '072 Patent is attached as Exhibit 17.

46.     KPN has declared the claimed subject matter of the '072 Patent to ETSI to be essential to the 3G, 4G, and 5G standards.[13]

47.     KPN purports to be the owner of U.S. Patent No. 9,372,098 (the "'098 Patent").  On June 21, 2016, the '098 Patent, entitled "Telecommunications network and method of transferring user data in signaling messages from a communication unit to a data processing centre," issued to Bryan Jerrel Busropan and Johannes Maria Van Loon.  Upon information and belief, KPN is the current assignee of the '098 Patent.  A copy of the '098 Patent is attached as Exhibit 18.

48.     KPN has declared the claimed subject matter of the '098 Patent to ETSI to be essential to the 3G, 4G, and 5G standards.[14]

---

[13]     ISLD-201708-016;     ISLD-202303-104;     ISLD-202403-024,     available     at https://ipr.etsi.org/DynamicReporting.aspx.
[14]     ISLD-201605-009;         ISLD-202110-026,         available         at https://ipr.etsi.org/DynamicReporting.aspx.

## CLAIMS FOR RELIEF

## COUNT I

## (Declaratory Judgment of Non-Infringement of the '141 Patent)

49.     Samsung repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

50.     The '141 Patent was part of the MCP Pool.  KPN has declared the '141 Patent to be essential to the 3G, 4G, and 5G standards.  Given KPN's Prior Lawsuits against Samsung, the expiration of KPN's covenant-not-to-sue Samsung based on the '141 Patent on December 31, 2024, KPN's representation that the '141 Patent is "relevant to [Samsung's] business," KPN's repeated allegations that Samsung's standard-compliant products necessarily infringe KPN's allegedly essential patents, KPN's attempt to recoup from Samsung license fees for KPN's patents in the MCP Pool—including the '141 Patent—for the time period of 2010 through 2024 in the Texas State Court Action, and KPN's history of enforcing its allegedly essential patents—including one or more of the Patents-in-Suit—against telecommunications companies in this District and other district courts, an actual controversy has arisen and now exists between the parties as to whether Samsung infringes any claim of the '141 Patent.

51.     Contrary to KPN's assertions, Samsung does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement), and/or under the doctrine of equivalents), any of the claims of the '141 Patent, at least because Samsung's smartphones and network equipment that are made, used, sold, offered for sale, or imported in the U.S. do not employ, incorporate, or otherwise make use of all the limitations of the '141 Patent's claims.

52.     For example, claim 1 requires "an Internet Protocol (IP) Multimedia Subsystems (IMS) based service provisioning network" with "a route header that points to an

Interrogating Call/Session Control Function (I-CSCF)." Samsung has not used, made, sold, offered for sale, or imported in the United States any product or service relating to the claimed IP IMS based service provisioning networks. As shown in Exhibits 2-4, Samsung's standard-compliant smartphone and network products made, used, sold, offered for sale, or imported in the United States, including, for example, the Samsung Galaxy S23, Samsung Galaxy A32 5G, Samsung Galaxy A54 5G, and Samsung SVR20A, do not implement the claimed IP IMS based service provisioning network. Thus, Samsung's products do not meet all limitations of at least claim 1.

53.    For the same reasons, Samsung's products do not infringe any other independent claim (claims 15, 20, or 23) of the '141 Patent.

54.    Samsung is entitled to a judicial declaration that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '141 Patent.

## COUNT II

### (Declaratory Judgment of Non-Infringement of the '910 Patent)

55.    Samsung repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

56.    The '910 Patent was part of the MCP Pool. KPN has declared the '910 Patent to be essential to the 3G, 4G, and 5G standards. Given KPN's Prior Lawsuits against Samsung, the expiration of KPN's covenant-not-to-sue Samsung based on the '910 Patent on December 31, 2024, KPN's representation that the '910 Patent is "relevant to [Samsung's] business," KPN's repeated allegations that Samsung's standard-compliant products necessarily

infringe KPN's allegedly essential patents, KPN's attempt to recoup from Samsung license fees for KPN's patents in the MCP Pool—including the '910 Patent—for the time period of 2010 through 2024 in the Texas State Court Action, and KPN's history of enforcing its allegedly essential patents—including one or more of the Patents-in-Suit—against telecommunications companies in this District and other district courts, an actual controversy has arisen and now exists between the parties as to whether Samsung infringes any claim of the '910 Patent.

57.    Contrary to KPN's assertions, Samsung does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement), and/or under the doctrine of equivalents), any of the claims of the '910 Patent, at least because Samsung's smartphones and network equipment that are made, used, sold, offered for sale, or imported in the U.S. do not employ, incorporate, or otherwise make use of all the limitations of the '910 Patent's claims.

58.    For example, claim 1 requires "the received wireless signalling message containing non-signalling application data generated for a machine-to-machine function."  But as shown in Exhibits 2-4, Samsung's standard-compliant smartphone and network products made, used, sold, offered for sale, or imported in the United States, including, for example, the Samsung Galaxy S23, Samsung Galaxy A32 5G, Samsung Galaxy A54 5G, and Samsung SVR20A, do not implement the claimed machine-to-machine function.  Thus, Samsung's products do not meet all limitations of at least claim 1.

59.    For the same reasons, Samsung's products do not infringe any other independent claim (claims 18, 20, or 25) of the '910 Patent.

60.    Samsung is entitled to a judicial declaration that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or

jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '910 Patent.

## COUNT III

### (Declaratory Judgment of Non-Infringement of the '134 Patent)

61.     Samsung repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

62.     The '134 Patent was part of the MCP Pool.  KPN has declared the '134 Patent to be essential to the 3G, 4G, and 5G standards.  Given KPN's Prior Lawsuits against Samsung, the expiration of KPN's covenant-not-to-sue Samsung based on the '134 Patent on December 31, 2024, KPN's representation that the '134 Patent is "relevant to [Samsung's] business," KPN's repeated allegations that Samsung's standard-compliant products necessarily infringe KPN's allegedly essential patents, KPN's attempt to recoup from Samsung license fees for KPN's patents in the MCP Pool—including the '134 Patent—for the time period of 2010 through 2024 in the Texas State Court Action, and KPN's history of enforcing its allegedly essential patents—including one or more of the Patents-in-Suit—against telecommunications companies in this District and other district courts, an actual controversy has arisen and now exists between the parties as to whether Samsung infringes any claim of the '134 Patent.

63.     Contrary to KPN's assertions, Samsung does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement), and/or under the doctrine of equivalents), any of the claims of the '134 Patent, at least because Samsung's smartphones and network equipment that are made, used, sold, offered for sale, or imported in the U.S. do not employ, incorporate, or otherwise make use of all the limitations of the '134 Patent's claims.

64.     For example, claim 1 requires "comparing in the one or more target devices the first representation of the identifier with the second representation of the identifier to obtain a comparison result for establishing a successful proximity discovery."  But as shown in Exhibits 2-4, Samsung's standard-compliant smartphone and network products made, used, sold, offered for sale, or imported in the United States, including, for example, the Samsung Galaxy S23, Samsung Galaxy A32 5G, Samsung Galaxy A54 5G, and Samsung SVR20A, do not implement the claimed proximity discovery.  Thus, Samsung's products do not meet all limitations of at least claim 1.

65.     For the same reasons, Samsung's products do not infringe any other independent claim (claims 10, 11, or 12) of the '134 Patent.

66.     Samsung is entitled to a judicial declaration that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '134 Patent.

## COUNT IV
### (Declaratory Judgment of Non-Infringement of the '887 Patent)

67.     Samsung repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

68.     The '887 Patent was part of the MCP Pool.  KPN has declared the '887 Patent to be essential to the 3G, 4G, and 5G standards.  Given KPN's Prior Lawsuits against Samsung, the expiration of KPN's covenant-not-to-sue Samsung based on the '887 Patent on December 31, 2024, KPN's representation that the '887 Patent is "relevant to [Samsung's] business," KPN's repeated allegations that Samsung's standard-compliant products necessarily infringe KPN's allegedly essential patents, KPN's attempt to recoup from Samsung license fees

for KPN's patents in the MCP Pool—including the '887 Patent—for the time period of 2010 through 2024 in the Texas State Court Action, and KPN's history of enforcing its allegedly essential patents—including one or more of the Patents-in-Suit—against telecommunications companies in this District and other district courts, an actual controversy has arisen and now exists between the parties as to whether Samsung infringes any claim of the '887 Patent.

69.     Contrary to KPN's assertions, Samsung does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement), and/or under the doctrine of equivalents), any of the claims of the '887 Patent, at least because Samsung's smartphones and network equipment that are made, used, sold, offered for sale, or imported in the U.S. do not employ, incorporate, or otherwise make use of all the limitations of the '887 Patent's claims.

70.     For example, claim 1 is directed to "[a] method for deriving a cryptographic key in a terminal," which comprises "deriving the cryptographic key using a first key and a second key, wherein the first key is received by the terminal from a network node in a network or derived by the terminal based on a parameter received from the network node," and "wherein the second key is a static key which is shared between the terminal and the application server prior to initial communication between the terminal and the application server." Samsung's standard-compliant smartphone and network products made, used, sold, offered for sale, or imported in the United States, including, for example, the Samsung Galaxy S23, Samsung Galaxy A32 5G, Samsung Galaxy A54 5G, and Samsung SVR20A do not perform the recited steps. Indeed, as the '887 Patent discloses, the claimed method is used for "secure transfer of data from a terminal to an application server, for example for machine-to-machine (M2M) communication." As shown in Exhibits 2-4, Samsung's standard-compliant smartphone and network products made, used, sold,

offered for sale, or imported in the United States do not implement the claimed machine-to-machine communication.  Thus, Samsung's products do not meet all limitations of at least claim 1.

71.    For the same reasons, Samsung's products do not infringe any other independent claim (claims 7, 13, 16, 19, or 20) of the '887 Patent.

72.    Samsung is entitled to a judicial declaration that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '887 Patent.

## COUNT V
### (Declaratory Judgment of Non-Infringement of the '820 Patent)

73.    Samsung repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

74.    The '820 Patent was part of the MCP Pool.  KPN has declared the '820 Patent to be essential to the 3G and 4G standards.  Given KPN's Prior Lawsuits against Samsung, the expiration of KPN's covenant-not-to-sue Samsung based on the '820 Patent on December 31, 2024, KPN's representation that the '820 Patent is "relevant to [Samsung's] business," KPN's repeated allegations that Samsung's standard-compliant products necessarily infringe KPN's allegedly essential patents, KPN's attempt to recoup from Samsung license fees for KPN's patents in the MCP Pool—including the '820 Patent—for the time period of 2010 through 2024 in the Texas State Court Action, and KPN's history of enforcing its allegedly essential patents—including one or more of the Patents-in-Suit—against telecommunications companies in this

District and other district courts, an actual controversy has arisen and now exists between the parties as to whether Samsung infringes any claim of the '820 Patent.

75.     Contrary to KPN's assertions, Samsung does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement), and/or under the doctrine of equivalents), any of the claims of the '820 Patent, at least because Samsung's smartphones and network equipment that are made, used, sold, offered for sale, or imported in the U.S. do not employ, incorporate, or otherwise make use of all the limitations of the '820 Patent's claims.

76.     For example, claim 1 requires "establishing the D2D communication session over the D2D communication channel based on the session key." But as shown in Exhibits 2-4, Samsung's standard-compliant smartphone and network products made, used, sold, offered for sale, or imported in the United States, including, for example, the Samsung Galaxy S23, Samsung Galaxy A32 5G, Samsung Galaxy A54 5G, and Samsung SVR20A do not implement the claimed D2D communication. Thus, Samsung's products do not meet all limitations of at least claim 1.

77.     For the same reasons, Samsung's products do not infringe any other independent claim (claims 15, 16, or 17) of the '820 Patent.

78.     Samsung is entitled to a judicial declaration that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '820 Patent.

## COUNT VI

### (Declaratory Judgment of Non-Infringement of the '572 Patent)

79.     Samsung repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

80.     The '572 Patent was part of the MCP Pool.  KPN has declared the '572 Patent to be essential to the 3G and 4G standards.  Given KPN's Prior Lawsuits against Samsung, the expiration of KPN's covenant-not-to-sue Samsung based on the '572 Patent on December 31, 2024, KPN's representation that the '572 Patent is "relevant to [Samsung's] business," KPN's repeated allegations that Samsung's standard-compliant products necessarily infringe KPN's allegedly essential patents, KPN's attempt to recoup from Samsung license fees for KPN's patents in the MCP Pool—including the '572 Patent—for the time period of 2010 through 2024 in the Texas State Court Action, and KPN's history of enforcing its allegedly essential patents—including one or more of the Patents-in-Suit—against telecommunications companies in this District and other district courts, an actual controversy has arisen and now exists between the parties as to whether Samsung infringes any claim of the '572 Patent.

81.     Contrary to KPN's assertions, Samsung does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement), and/or under the doctrine of equivalents), any of the claims of the '572 Patent, at least because Samsung's smartphones and network equipment that are made, used, sold, offered for sale, or imported in the U.S. do not employ, incorporate, or otherwise make use of all the limitations of the '572 Patent's claims.

82.     For example, claim 1 requires "establishing the D2D communication session over the D2D communication channel based on the session key."  But as shown in Exhibits 2-4, Samsung's standard-compliant smartphone and network products made, used, sold, offered

for sale, or imported in the United States, including, for example, the Samsung Galaxy S23, Samsung Galaxy A32 5G, Samsung Galaxy A54 5G, and Samsung SVR20A do not implement the claimed D2D communication function. Thus, Samsung's products do not meet all limitations of at least claim 1.

83.    For the same reasons, Samsung's products do not infringe any other independent claim (claims 15, 16, or 17) of the '572 Patent.

84.    Samsung is entitled to a judicial declaration that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '572 Patent.

## COUNT VII

## (Declaratory Judgment of Non-Infringement of the '072 Patent)

85.    Samsung repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

86.    The '072 Patent was part of the MCP Pool. KPN has declared the '072 Patent to be essential to the 3G, 4G, and 5G standards. Given KPN's Prior Lawsuits against Samsung, the expiration of KPN's covenant-not-to-sue Samsung based on the '072 Patent on December 31, 2024, KPN's representation that the '072 Patent is "relevant to [Samsung's] business," KPN's repeated allegations that Samsung's standard-compliant products necessarily infringe KPN's allegedly essential patents, KPN's attempt to recoup from Samsung license fees for KPN's patents in the MCP Pool—including the '072 Patent—for the time period of 2010 through 2024 in the Texas State Court Action, and KPN's history of enforcing its allegedly essential patents—including one or more of the Patents-in-Suit—against telecommunications

companies in this District and other district courts, an actual controversy has arisen and now exists between the parties as to whether Samsung infringes any claim of the '072 Patent.

87.     Contrary to KPN's assertions, Samsung does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement), and/or under the doctrine of equivalents), any of the claims of the '072 Patent, at least because Samsung's smartphones and network equipment that are made, used, sold, offered for sale, or imported in the U.S. do not employ, incorporate, or otherwise make use of all the limitations of the '072 Patent's claims.

88.     For example, claim 1 is directed to "[a] method for controlling activation of a plurality of terminals in a machine-type communication application using a wireless access network."  But as shown in Exhibits 2-4, Samsung's standard-compliant smartphone and network products made, used, sold, offered for sale, or imported in the United States, including, for example, the Samsung Galaxy S23, Samsung Galaxy A32 5G, Samsung Galaxy A54 5G, and Samsung SVR20A, do not implement the claimed machine-type communication.    Thus, Samsung's products do not meet all limitations of at least claim 1.

89.     For the same reasons, Samsung's products do not infringe any other independent claim (claim 9) of the '072 Patent.

90.     Samsung is entitled to a judicial declaration that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '072 Patent.

## COUNT VIII

### (Declaratory Judgment of Non-Infringement of the '098 Patent)

91.     Samsung repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

92.     The '098 Patent was part of the MCP Pool.  KPN has declared the '098 Patent to be essential to the 3G, 4G, and 5G standards.  Given KPN's Prior Lawsuits against Samsung, the expiration of KPN's covenant-not-to-sue Samsung based on the '098 Patent on December 31, 2024, KPN's representation that the '098 Patent is "relevant to [Samsung's] business," KPN's repeated allegations that Samsung's standard-compliant products necessarily infringe KPN's allegedly essential patents, KPN's attempt to recoup from Samsung license fees for KPN's patents in the MCP Pool—including the '098 Patent—for the time period of 2010 through 2024 in the Texas State Court Action, and KPN's history of enforcing its allegedly essential patents—including the '098 Patent—against telecommunications companies in this District and other district courts, an actual controversy has arisen and now exists between the parties as to whether Samsung infringes any claim of the '098 Patent.

93.     Contrary to KPN's assertions, Samsung does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement), and/or under the doctrine of equivalents), any of the claims of the '098 Patent, at least because Samsung's smartphones and network equipment that are made, used, sold, offered for sale, or imported in the U.S. do not employ, incorporate, or otherwise make use of all the limitations of the '098 Patent's claims.

94.     For example, claim 1 is directed to "[a] method of transferring data from a communication module to a machine-to-machine server over a telecommunications network."  But as shown in Exhibits 2-4, Samsung's standard-compliant smartphone and network products made,

used, sold, offered for sale, or imported in the United States, including, for example, the Samsung Galaxy S23, Samsung Galaxy A32 5G, Samsung Galaxy A54 5G, and Samsung SVR20A, do not implement the claimed machine-to-machine communication and do not "transfer[] data from a communication module to a machine-to-machine server over a telecommunications network." Thus, Samsung's products do not meet all limitations of at least claim 1.

95.    For the same reasons, Samsung's products do not infringe any other independent claim (claims 15, 17, or 21) of the '098 Patent.

96.    Samsung is entitled to a judicial declaration that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '098 Patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Samsung prays that this Court enter judgment against Defendants as follows:

A.    Enter judgment in favor of Samsung;

B.    Declare that Samsung does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the Patents-in-Suit;

C.    Enter a judgment awarding Samsung its expenses, costs, and attorneys' fees under applicable laws;

D.    Find based upon 35 U.S.C. § 285 that KPN's continued enforcement of the Patents-in-Suit is exceptional;

E.      Award Samsung pre-judgment and post-judgment interest to the full extent allowed under the law, as well as its costs; and

F.      Such other relief, including other monetary and equitable relief, as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all claims and issues so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

*/s/ Rodger D. Smith II*

_____

Sean Pak
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600

Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@morrisnichols.com

Kevin Hardy
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street, N.W., Suite 900
Washington, DC 20005
(202) 538-8000

*Attorneys for Plaintiffs*

January 1, 2025